SMITH, Judge.
On appeal of a workers’ compensation order claimant maintains that the judge of compensation claims (JCC) erred in failing to include the value of uniforms furnished by the employer in computing the claimant’s average weekly wage (AWW). Claimant also attacks the constitutionality of section 440.15(3)(a)l, Florida Statutes (1989), both facially and as applied, on equal protection grounds. We reverse on the first issue, and affirm on the second.
Claimant, employed by Hillsborough County (County) as an equipment operator, suffered the loss of both of his lower extremities in a work-connected lawn mower accident. He also developed kidney failure during his three-month hospitalization, had to have his spleen removed, and experienced a heart attack, apparently as a result of his preexisting heart disease. Temporary total disability benefits were paid from the date of the accident and until December 28, 1990, when claimant was accepted as permanently totally disabled by the employer/carrier (E/C).
The facts bearing on the first issue, claimant’s AWW, are not in substantial dispute. The County provided uniforms for claimant to wear only while at work. These uniforms had a value of $96.52 per year, or $1.86 per week. Although claimant was not able to work after the accident, the County did not terminate claimant from his employment, but instead, maintained his status as an employee of the County so as to preserve claimant’s health insurance benefits. Notwithstanding claimant’s inability to work, the County continued to furnish uniforms to the claimant. In addition to not being on work status, which precluded claimant’s use of these uniforms, it also appears that because of his weight gain, the uniforms would no longer fit him.
In his final order, the JCC denied claimant’s request for inclusion in his AWW of the value of these uniforms furnished to him, based upon the JCC’s finding that claimant was still being furnished all fringe benefits, and that until such time as claimant was terminated from employment, he would not be entitled to have the uniforms included in his AWW. The JCC’s order states, in part: “He still has the uniforms and still has the same use of them that he had prior to the injury.” We find that the JCC erred in this ruling.
We first note that whether the value of uniforms supplied to claimant while working was a fringe benefit includable in computing his AWW is not in issue. The JCC’s order itself holds that the value of the uniforms shall be included in claimant’s AWW after his termination by the County. *805 The question, therefore, is whether by reason of the fact that claimant had not been officially terminated from employment, but was being carried on the County’s records as employed for purposes of retaining his health insurance benefits, he was still receiving the “benefit” of uniforms furnished to him by the County, even though he was not able to use the uniforms for any purpose. As to this issue, the JCC’s order finding that the claimant “still has the uniforms and still has the same use of them that he had prior to the injury,” is contrary to the uncontroverted evidence. By regulation of the County, claimant was not allowed to wear the uniforms while off duty. Leaving aside the claimant’s evidence that he could no longer wear the uniforms furnished him because of weight gain, it cannot seriously be suggested that this severely disabled and handicapped claimant was “on duty,” so as to be entitled to wear these uniforms. Thus, he is no longer receiving from the uniforms the tangible benefit he enjoyed at the time of injury. See, Griffin v. Orlando Regional Medical Center, 578 So.2d 448 (Fla. 1st DCA 1991) (AWW should include fringe benefits a claimant no longer receives). It was therefore error to fail to include the value of uniforms furnished claimant in his AWW from the date of injury.
Turning to the constitutional issue, claimant urges that section 440.15(3)(a)l, Florida Statutes (1989), denies equal protection under Article I, Section 2, Florida Constitution, and the Fourteenth Amendment to the U.S. Constitution. Under the statute, a claimant sustaining an amputation of one leg is entitled to a special impairment benefit, unrelated to his actual loss of wage-earning capacity. A claimant suffering a loss of both legs, as in the present case, is not entitled to the impairment benefit provided by that section. As claimant acknowledges, under the statutory provision at issue, the impairment is not awarda-ble for “an injury entitling the injured worker to permanent total disability benefits ...,” pursuant to section 440.15(1). The latter section provides, among other things, that loss of both legs “shall, in the absence of conclusive proof of a substantial earning capacity, constitute permanent total disability.” Claimant urges that the provision under attack produces an irrational and arbitrary result, effectively discriminating against a class of workers, such as claimant, without distinctions or differences which are reasonably related to the purposes of the Workers’ Compensation law. Claimant also urges that even if facially constitutional, section 440.15(3)(a)l is unconstitutional as applied in his case because the impairment benefit is payable within twenty days after the date of maximum medical improvement, but was denied to claimant notwithstanding the fact that on the date he reached maximum medical improvement, July 26, 1990, he had not been accepted as permanent totally disabled.[1] We find no merit in these claims of unconstitutionality.
This court has had occasion to consider an equal protection challenge to section 440.15(3)(a)l. Carr v. Central Florida Aluminum Products, 402 So.2d 565 (Fla. 1st DCA 1981). As we explained in Carr, the Legislature has, in effect, presumed that the designated injuries identified in section 440.15(3)(a)l will “almost inevitably result in economic loss of the sort the legislature determined to compensate.” Id. at 567. In the case of single amputations, special recognition has been given to that type of injury by providing for a special impairment benefit, unrelated to proof of actual wage loss. On the other hand, in the ease of double amputations, special recognition has been given to that type of injury pursuant to section 440.15(l)(b), by in effect presuming entitlement to permanent total disability in the absence of “conclusive proof of substantial earning capacity.”
Upon consideration of the arguments of the parties, we are of the view that the statute does not discriminate against amputees in an irrational manner, but simply provides differently with respect to the in *806 demnity benefits available, depending upon the extent of the injury and its presumed relation to wage earning ability. We think it is apparent, requiring no citation of authority, that the perceived relationship between physical impairment and the loss of earning capacity has historically been the sine qua non of workers’ compensation legislation in Florida. Further, as we concluded in Carr, the scheduling of obviously significant injuries for special treatment is reasonably related to the Legislature’s purpose in “making the benefit payment system more efficient_” Id. at 568. In Carr, we found that the statute accomplished this by eliminating endless debates over “exactly what percentage of use of a limb, for instance, has been lost in a given case.” Id. With respect to the type of injuries involved in the present case, the statute provides entitlement to an immediate economic benefit to a claimant suffering the loss of limbs or other serious bodily injuries, based upon the presumed seriousness of these injuries, without the necessity for proof and debate before a judge to establish the extent of economic loss on a case-by-case basis. We conclude that the requirements of a reasonable basis for classification, and the furtherance of a legitimate state purpose or objective, necessary to meet a constitutional equal protection challenge, have been satisfied in this case. See Sasso v. Ram Property Management, 431 So.2d 204, 218 (Fla. 1st DCA 1983), approved, 452 So.2d 932 (Fla.1984).
We likewise find no merit in claimant’s contention that the statute is unconstitutional as applied. As we understand claimant’s argument, he maintains that because the E/C failed to accept claimant as PTD until December 28,1990, claimant was not classified as PTD twenty days after MMI, and therefore the claimant should have been awarded the scheduled benefit under section 440.15(3)(a)l. We find that this argument is based upon a misperception of the language of the statute, which provides for impairment benefits for certain injuries “other than an injury entitling the injured worker to permanent, total disability benefits_” The denial of the impairment benefit provided under section 440.15(3)(a)l is not dependent upon the E/C’s acceptance of PTD as of the date the benefit is otherwise payable, but instead, upon the claimant’s entitlement to that classification. Here, there is no issue of entitlement to PTD, since the claimant’s double amputation long preceded his reaching MMI.
Having considered the arguments as above-noted and as included in the briefs, we find that the order appealed should be affirmed except as above stated.
AFFIRMED in part, REVERSED in part, and REMANDED for recalculation of AWW.
ERVIN and ALLEN, JJ., concur.

. As noted, the E/C accepted claimant as PTD on December 28, 1990, some six months after the date of MMI.